<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NATHANIEL PETERSON,                  :
                                     :
              Plaintiff,             : Civil Action No. 06-548 (DMC)
                                     :
         v.                          :      **O P I N I O N**
                                     :
HUDSON COUNTY CORRECTIONAL           :
CENTER, et al.,                      :
                                     :
              Defendants.            :
_____      :

**APPEARANCES:**

      NATHANIEL PETERSON, Plaintiff <u>pro</u> <u>se</u>
      1302 Washington Street, Apt. 5M
      Hoboken, New Jersey  07030

**CAVANAUGH**, District Judge

      Plaintiff, Nathaniel Peterson ("Peterson"), was a state
inmate confined at the Hudson County Correctional Center in South
Kearny, New Jersey, at the time he submitted this Complaint for
filing.  He seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant
to 28 U.S.C. § 1915.  Based on his affidavit of indigence, the
Court grants Peterson's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>
and directs the Clerk of the Court to file the Complaint without
pre-payment of the filing fee.

      Having reviewed the Complaint and Amended Complaint[1] to
identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2)

_____

      [1]  On March 9, 2006, the Clerk's Office received an Amended
Complaint from plaintiff.  (Docket Entry No. 2).

and 1915A, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

The following factual allegations are taken from the Complaint and Amended Complaint and are accepted as true for purposes of this review. In his initial Complaint, Peterson asserts a conditions of confinement claim, as well as an interference with the mail claim and a denial of access to the courts claim with respect to the lack of legal assistants in the jail law library.  The named defendants are: the Hudson County Correctional Center ("HCCC"); Director Oscar Aviles; and Deputy Director Eric Roberts.

Plaintiff first alleges a conditions of confinement claim with respect to the Hudson County Correctional Center ("HCCC"), claiming unsanitary living conditions, inadequate cleaning supplies, overcrowded conditions, and housing inmates in general population despite infectious and contagious diseases.  Plaintiff also alleges that the officials at HCCC do not honor certified mail which interferes with their legal mail and access to the courts.  Further, there are no legal assistants in the law library to help inmates with their legal research needs.

In his Amended Complaint, Peterson asserts that he was taken into custody on October 21, 2005 for violation of his work release program.  He states that he was not permitted to call his

daughters so that he could send them for placement and not be left home alone.  He was put in solitary confinement for 30 days. Peterson claims that he was supposed to complete his work release on November 11, 2005 with good time credits and work credits, but these credits were deducted, and his new maximum release date was to be March 19, 2006.  He states that he did not have a hearing before a judge on this work release violation.  He also states that he has been held illegally past his release date of January 18, 2006.

Peterson names the following additional defendants in his Amended Complaint: Hudson County ("[t]hey oversee the daily operations of the jail and are responsible for their actions"); Hudson County Sheriff's Department ("responsible for transporting [plaintiff] to county jail");[2] Al Santos, Mayor of Kearny ("[h]e is responsible for the county jail operations due to it being under Kearny's jurisdiction"); Sgt. Alvarez, HCCC officer ("[h]e oversee the legality of [plaintiff's] re-arrest"); and Sgt. Cannon, HCCC officer ("[h]e is responsible for the process of [plaintiff's] confinement and max date release").

Peterson seeks compensatory and punitive damages for more than $30 million dollars.  To the extent he also seeks injunctive

---

[2]  Because there are no allegations that Peterson was injured or deprived of any constitutional right in his transportation to the jail, the Complaint will be dismissed in its entirety as against defendant, Hudson County Sheriff's Department.

relief, or release from jail, such claims are now rendered moot because Peterson was released from custody at HCCC shortly after he filed his Amended Complaint.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[3]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

---

[3]  Plaintiff should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It appears that plaintiff has not incurred any strikes under 28 U.S.C. § 1915(g).

4

assume the truth of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiffs. <u>Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division</u>, 411 F.3d 427, 431 (3d Cir. 2005).  The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim

but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).
A complaint that sets forth facts which affirmatively demonstrate
that the plaintiff has no right to recover is properly dismissed
without leave to amend.  Grayson, 293 F.3d at 106.

### III.  **SECTION 1983 LIABILITY**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his constitutional rights.  Section 1983
provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against the Hudson County Correctional Center are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability. See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976). Accordingly, the Complaint will be dismissed in its entirety as against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.  ANALYSIS

Turning to the remaining defendants, the Court liberally construes the allegations in the complaint as asserting: (1) a § 1983 conditions of confinement claim in violation of the Fourteenth Amendment; (2) an interference with the legal mail claim; (3) a denial of access to the courts claim; (4) a denial of due process claim; and (5) a loss of good time and work credits claim.

A.  Conditions of Confinement Claim

Construing the allegations of the Complaint most liberally for the pro se plaintiff, as the Court is required to do on a sua

7

sponte screening, it appears that the Complaint alleges a conditions of confinement claim and that the plaintiff was a pretrial detainee, at least at the time he initiated this action. Therefore, this claim should be examined under the Due Process Clause of the Fourteenth Amendment.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute

9

punishment, and therefore, did not violate the pretrial detainees' due process rights.  Id., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days. However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment."  Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983).  There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.  In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, plaintiff alleges that he has been detained in unsanitary and overcrowded conditions, which has exposed him to other inmates who may have serious contagious diseases.  This period of confinement under such adverse conditions lasted for

one year (Peterson states that he was first detained at HCCC on March 21, 2005 and was not released from HCCC until March 22, 2006).  One year would seem to be an extended period of time for endurance of these unsanitary and overcrowded conditions.  Thus, if these allegations are true, the adverse conditions as alleged may be excessive in relation to their stated purpose, and defendants' alleged disregard for the health and public safety of the inmates at an overcrowded jail facility may imply that their non-action is intended as punishment, or at the least, a grossly inadequate response to a genuine public health and environmental concerns that serves no legitimate governmental purpose.  See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993); see also Hubbard v. Taylor, 399 F.3d 150, 158-63 (3d Cir. 2005). Therefore, the Court will allow this conditions claim to proceed at this time as against defendants, Director Aviles, Deputy Director Roberts, and Hudson County.[4]

---

[4]  Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

Cir. 1988) (citations omitted).  Accord Robinson v. City of
Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v.
Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

    To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom." Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516
U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must
demonstrate that, through its deliberate conduct, the
municipality was the moving force behind the plaintiff's injury.
Monell, 436 U.S. at 689.

    A policy is made "when a decisionmaker possess[ing]
    final authority to establish municipal policy with
    respect to the action issues a final proclamation,
    policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
    (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
    475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
    (1986) (plurality opinion)).  A custom is an act "that
    has not been formally approved by an appropriate
    decisionmaker," but that is "so widespread as to have
    the force of law." [Bd. of County Comm'rs of Bryan
    County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

    There are three situations where acts of a
government employee may be deemed to be the result of a
policy or custom of the governmental entity for whom
the employee works, thereby rendering the entity liable
under § 1983.  The first is where "the appropriate
officer or entity promulgates a generally applicable
statement of policy and the subsequent act complained
of is simply an implementation of that policy."  The
second occurs where "no rule has been announced as
policy but federal law has been violated by an act of
the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

B.   <u>Interference with the Mail Claim</u>

Next, plaintiff alleges that the HCCC does not honor

certified mail, thereby circumscribing inmates' access to the

courts.  Inmates have a limited liberty interest in their mail

under the First and Fourteenth Amendments; thus, an inmate's

constitutional right to send and receive mail may be restricted

only for legitimate penological interests.  <u>See</u> <u>Thornburgh v.</u>

<u>Abbott</u>, 490 U.S. 401, 407 (1989); <u>Turner v. Safley</u>, 482 U.S. 78,

89 (1987).  A single interference with the delivery of an

_____

<u>Natale</u>, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or
her official capacity "generally represent[s] only another way of
pleading an action against an entity of which an officer is an
agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-
capacity action, ... a governmental entity is liable under § 1983
only when the entity itself is a 'moving force' behind the
deprivation; thus, in an official capacity suit the entity's
'policy or custom' must have played a part in the violation of
federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)
(internal quotation marks and citations omitted).

With respect to this conditions of confinement claim against
the supervisory defendants, a liberal construction of the
Complaint permits an inference on the part of these defendants to
ignore, tolerate, or acquiesce in the alleged unconstitutional
conditions at HCCC.  As this claim is likely to be fact
intensive, the Court will permit said claim to proceed against
the defendants, Director Aviles, Deputy Director Roberts, and
Hudson County, because these are the defendants who allegedly had
an active role in running and supervising the daily operations of
the HCCC.  However, the Complaint will be dismissed as against Al
Santos, the Mayor of Kearny because there is no factual support
for the claim that the Mayor has a role, supervisory or
otherwise, in the daily operations of the Hudson County jail.

inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

Here, plaintiff alleges a pattern or policy by HCCC officials in denying certified mail for no apparent penological purpose. This allegation, although general, suggests that the HCCC officials are deliberately interfering with the inmates' legal mail, which is usually sent and received by certified mail. However, as Peterson has since been released from HCCC and has not alleged any actual injury with respect to this claim, the Court will dismiss this claim without prejudice.

C.   Inadequate Law Library Claim

Peterson next asserts that there are no paralegals or legal assistants at the HCCC law library to help inmates with legal research. The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also

14

Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

    In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).  Similarly, a pretrial detainee
has a right of access to the courts with respect to legal
assistance and participation in one's own defense against pending
criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-
84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa.
March 31, 2000).  But see United States v. Byrd, 208 F.3d 592,
593 (7th Cir. 2000) (pretrial detainee who rejects an offer of
court-appointed counsel in satisfaction of the Sixth Amendment

right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Peterson fails to allege any actual injury as a result of the alleged non-existence of paralegals or legal assistants in the law library.  Moreover, it is clear that Peterson was able to file this Complaint without any allegations that his efforts to do so were encumbered in any way.  Therefore, plaintiff does not show actual injury with respect to the general claim that he was denied access to the courts by the alleged failure of the HCCC

officials to provide paralegals or legal assistants in the jail law library for the inmates' research needs.  This claim will be dismissed without prejudice.

D.  <u>Denial of Due Process Claim</u>

In his amended pleading, Peterson alleges that he was denied a hearing before a judge with respect to his "arrest" for a work release violation.[5]  He also asserts that he was placed in solitary confinement for 30 days.

1.  *No Hearing on Work Release Violation.*

To support a denial of procedural due process claim, Peterson must demonstrate that the procedures afforded him fell short of the requirements enunciated in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).[6]  <u>Jackson v. Johnson</u>, 15 F. Supp.2d 341, 351 (S.D.N.Y. 1998).  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 487 (1995).  In <u>Wolff v. McDonnell</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.[7]  An

_____

[5]  Peterson alleges that he was not allowed to call his daughters when he was taken into custody.  This claim does not rise to the level of constitutional dimension, and will be dismissed accordingly.

[6]  In <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).

[7]  Violation of work release is not the same as a parole or probation violation.  A prisoner has no liberty or property

inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) the right to an impartial hearing; (3) assistance from an inmate or staff representative if the charged inmate is illiterate or if complex issues are involved; (4) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals"; and (5) written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 563-72.

Here, Peterson claims that he was denied a hearing with respect to his work release violation. If true, this would be a violation of Peterson's right to due process, and Peterson may bring a § 1983 action for money damages related to the alleged denial of procedural due process. See Wolff, supra; Henry v. Sanchez, 923 F. Supp. 1266, 1270 (C.D. Calif. 1996). In Wolff,

---

interest in remaining in a work release program. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666 (8th Cir. 1996); McGoue v. Janecka, 211 F. Supp.2d 627 (E.D.Pa. 2002). See also Asquith, 186 F.3d at 409-11. In Asquith, the Third Circuit held that because an inmate is normally incarcerated in prison, the plaintiff's return to prison from a halfway house or work release program "did not impose atypical and significant hardship upon him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." Id. at 412. Therefore, the Court will examine the claim asserted here as a disciplinary violation, rather than a probation or parole violation.

the Supreme Court held that, although claims for injunctive relief were barred by <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), plaintiffs were allowed to bring a damage claim because the claim was based on "damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedure."  <u>Sanchez</u>, 923 F. Supp. at 1270.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court reaffirmed this principle, stating that <u>Wolff</u> "recognized a Section 1983 claim for using the wrong procedures, not for reaching the wrong result. ... Thus, the claim at issue in <u>Wolff</u> did not call into question the lawfulness of plaintiff's continuing confinement." <u>Heck</u>, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought.  See <u>Carey v. Piphus</u>, 435 U.S. 247, 261 (1977).  A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury. <u>Carey</u>, 435 U.S. at 266-67.

Here, it would appear that Peterson is actually challenging the constitutionality of the procedures used, or more correctly, the lack of a hearing as guaranteed under <u>Wolff</u>.  He is not

19

challenging the result, *i.e.*, his return to prison.  Therefore, the Court will allow this claim to proceed.

    2.  *Disciplinary Confinement*.

    Next, Peterson claims that his placement in solitary confinement or disciplinary segregation for 30 days violated due process.  In this instance, Peterson's procedural due process rights are triggered by a deprivation of a legally cognizable liberty interest.[8]  For a prisoner, like Peterson was at the time he filed his Complaint and Amended Complaint, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law."  Id.  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S. at 480.  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway

---

    [8] The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."

house).  Here, Peterson's disciplinary segregation for 30 days,
even if due to alleged false disciplinary actions, did not
trigger the protections of the Due Process Clause.  See id.

The Third Circuit has observed, however, that if an inmate
is committed to undesirable conditions for an atypical period of
time in violation of state law, that factor should be considered
in determining whether the prisoner has been subjected to
"atypical and significant hardship" triggering due process
protection.  Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir.
1997)(disciplinary segregation of state prisoner for 15 months
did not impose atypical and significant hardship on prisoner, and
thus, did not implicate the due process clause).  Again, the
Complaint fails to allege a claim of atypical or significant
hardship with respect to Peterson's solitary confinement.  The
time he spent in disciplinary segregation was short, only 30
days.  Thus, he fails to state a deprivation claim of
constitutional magnitude.  Accordingly, this aspect of Peterson's
due process claim will be dismissed for failure to state a
cognizable claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).

E.  Loss of Good Time and Work Credits

Peterson also asserts in his Amended Complaint that he lost
all of his good time credits and work credits when he was
returned to HCCC on the work release violation.  He contends that

his maximum release date should have been January 10, 2006, but after loss of credits, his release date was March 19, 2006. Thus, it appears that the relief sought in this instance is release from jail. Such claim is rendered moot because Peterson has been released from jail.

In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court held that a habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement. 411 U.S. at 498-99. The Court extended this ruling to include a challenge to prison disciplinary proceedings that affect the length of confinement, such as the deprivation or loss of good conduct time. Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).

Here, Peterson has been released from jail, therefore, his claim must be dismissed because he fails to satisfy the "case or controversy" requirement. Article III of the United States Constitution limits the judicial power of the federal courts to "cases or controversies" between parties. U.S. Const. art. III, § 2. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."

Spencer v. Kemna, 523 U.S. 1, 7 (1998).  "[A] federal court
[lacks] the power to render advisory opinions."  U.S. Nat'l Bank
of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S.
439, 445 (1993)(*quoting* Preiser v. Newkirk, 422 U.S. 395, 401
(1975)).

Because Peterson is merely challenging the loss of credits
and the computation of his maximum release date, there are no
continuing consequences alleged sufficient to satisfy the case or
controversy requirement now that he has been released from
custody.  This claim should be dismissed as moot.

## V.  CONCLUSION

For the reasons stated above, the Court will dismiss without
prejudice the plaintiff's § 1983 claims alleging interference
with the mail and denial of access to the courts as a result of
defendants' failure to provide legal assistants to the inmates.
Further, the Complaint will be dismissed with prejudice, in its
entirety, as against the defendants, Hudson County Correctional
Center, Hudson County Sheriff's Department, Al Santos, Mayor of
Kearny, Sgt. Alvarez, and Sgt. Cannon, pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1), because plaintiff has failed
to state a claim against these defendants.  The denial of due
process claim regarding disciplinary segregation for 30 days and
refusal to allow plaintiff to telephone his daughters when he was
returned to HCCC for the work release violation will be dismissed

23

with prejudice for failure to state a claim.  Plaintiff's claim regarding loss of good time and work credits will be dismissed as moot, since he has been released from custody.  Finally, the claims asserting unconstitutional conditions of confinement and denial of a hearing on his work release violation, as against the remaining defendants, Hudson County, Director Aviles and Deputy Director Roberts, will be allowed to proceed at this time.  An appropriate Order follows.


        S/ Dennis M. Cavanaugh
      DENNIS M. CAVANAUGH
      United States District Judge

DATED: 5/9/06